The next case, number 23-1018, Monica Perez-Perez et al. v. Hospital Episcopal San Lucas Incorporated et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning again, Your Honors. David Efron for the appellant. We'd like to reserve three minutes for you. Defendants in this case alleged a liability cap which requires a contract by the defendant physician with the hospital as a teaching facility. The district court had been requiring defendants to produce that contract since 2020 and defendants could not. Does the statute use the word contract? Does a written contract? Yes, Your Honor. That's what they do every year except that this one year. My question was, does the statute, does the statute that grants the liability limitation, what language are you reporting to in that? Going with the facts of the case where the court, if you look at the record, the court ordered based on defendants representations that there was a contract, ordered them to produce the contract within 10 days. If that was in 2020, it's clear that no contract exists. At that point, at that point, I'm still you're saying that this that the statute requires that there be a written contract? Well, there's a couple of requirements. But are you saying that it requires there to be a written contract? I'm saying that this hospital has a contract with all of their teaching physicians in place. Are you saying instead that the contract simply requires that there be a faculty member? Then they have to prove that they're a faculty member. And the fact that there isn't a contract you cite as evidence that there isn't, is that what you're instead saying? And that's what the defendants also represented at the hearings. So at that point, absent a contract, any defendant, this Dr. Concepcion being a working in the teaching facility as an instructor, goes to witness his testimony. Because of that, it goes to weight and credibility. Magistrate said that. Issues that are within the province of the fact-finder at trial. Over plaintiff's objection, the court held a hearing to determine these questions of fact. If Dr. Concepcion was a teaching fellow at the hospital when the baby was born in 2015, absent the required contract, and if therefore the statutory cap applies. The factual evidence at the hearing, based on testimony, fell well short of a showing that Dr. Concepcion was in a role as a volunteer faculty instructor. Is there Puerto Rico law on whether it's for the judge or not to decide whether the cap applies? There is, but when it comes to, if it becomes an issue of fact, then in this federal setting, it has to go to the trier of fact. So just so I understand, are you saying that's because of ERIE and you're treating it as a procedural question? Yes, Your Honor. And what are you relying on for that? So in other words, Puerto Rico law itself would provide that it's for the judge to decide? If we were in Puerto Rico court, not in this court, the judge is a trier of fact. In this court, the jury is a trier of fact, which is why when it comes to issues of credibility and weight of evidence, it must be a jury to determine the facts of the case. May I continue? Yeah, I just didn't see anything in your brief laying out the ERIE analysis of this that would tell us that we could be confident that the right answer in the ERIE analysis for a liability cap, if it was contrary to how the Puerto Rico, how the local law would allocate the decision. Local courts and civil cases have this. I know that, but is there any, but so it's sort of over-determined, but I didn't know how to ask the question how you'd get at it. Well, the purpose is of whether, you know, sometimes with liability caps, like in Gasparini, sometimes a state wants to have extra control over the amount of damages that can be imposed, so they take it from the jury. And that can be a local choice. I guess what I'm trying to figure out, do we have any insight as to whether Puerto Rico has a particular stake in this, but it's hard to know how to get one's purchase on the question. To try to answer your question, I think that in Puerto Rican courts, as well as in the federal court in Puerto Rico, if there would be, if there's a an appointment, or if there's a contract, or even a letter, something that indicates during that time period you were a, you were a volunteer faculty instructor and qualifies you for the cap. If there would be anything like that, it's a no-brainer, but that was not the case here. So in this case, in federal court, as we would have to do in state court as well, they would have to bring in witnesses, and those witnesses would go to, you know, try to say what she was doing, what she wasn't doing, and... Let me ask you a different way. Is there anything in Puerto Rico law that addresses specifically whether Puerto Rico law treats the question of the applicability of the cap as a question of law or a question of fact, so that for purposes of review in the Puerto Rico courts, the review would be, say, for clear error rather than de novo? Is there any law on that question? I'm not familiar, but I think that, I think that it would be treated as a, as a, as an error of law. As only, Puerto Rico would treat it as an error of law? Yes. So, and you're asking us to treat it as a question of fact? Well, it's a question of fact because we're in federal court. I understand. So then that requires the Erie analysis. Yes. And it would be a divergence between how we would apply it in federal court from how the question would be treated in the Puerto Rico law. But none of that is briefed or addressed in the least bit in any of the papers, so it's a little hard to see how we're supposed to just take your word for it. But you see what, that's the problem that I'm... Well, we're, we can, we can do, we can do a subsequent letter and try to bring that up in a very short period of time if that's the court's concern. We honestly went just on the facts, and the facts were what, what was presented at the hearing. We feel that what was presented at the hearing, based on the testimony... Well, was it contested? Below was the argument from your opponent that this is a question of law? Yes. And then the district judge says, yes, it's a question of law. Did you raise the Erie point below? It did. Did they rely on Puerto Rico law in claiming that it was a question of law? I would think that Erie applies automatically. I know that, but did they rely on Puerto Rico law below in arguing that it was a question of law? Did they cite authorities that was Puerto Rico law? Well, it's a Puerto Rico statute that gives the, it's a Puerto Rico statute that gives the, the cap. Yeah, I know the cap, but the question of whether that, the applicability of the cap, whether Puerto Rico law treats it as a question of fact or law that would determine how Puerto Rico appellate courts would review it. Was that case law identified below? You know, rethinking it, I think it's probably a mixed answer. It's, it's, it's, the statute is, the statute that gives the cap is a law, but the facts have to be taken into consideration. And the facts are whether this, this facility and this doctor qualified for that cap. So, suppose, suppose, hypothetical here, suppose the case has been filed in Puerto Rico court, would be tried to the judge with no jury. Correct. So, that's what I'm going to do, says the district court, and has no jury, rejects a request for jury, and decides the case itself. What would you point to that would say the district court can't do that? Well, if it were a non-jury case, the court would have to rule on that. But this is not a non-jury case. Would you say we'd do a Seventh Amendment analysis? Where, where, where would be the authority? We did do a Seventh Amendment analysis in the brief at page 19 and 20. How does that work when you're in a jurisdiction where there is no jury trial in that case? Under, under ERIE, we, we, we, we bring that to federal court, not under ERIE, but when we, we bring that under the Seventh Amendment to federal court, and we're entitled to findings by a jury, not just the applicant. When you first, you might first have to do the ERIE analysis, and see if you could win under the ERIE analysis, you wouldn't get to the Seventh Amendment issue, if it was determined that it had to be go to the jury, just as a matter of ERIE, because of a procedural rule. But then, if not, then I suppose the Seventh Amendment issue would be raised, but then there would be questions about how does the Seventh Amendment apply to liability caps? So, which doesn't seem like an obvious answer. Well, well, you know, factually, which is why this is appropriate for a jury, and not for, for, for the magistrate judge to rule on, the, the have a contract, and she also admitted that, absent a contract, she's not legally a part of the staff. The hospital administrator, another doctor, said that there was no record that on the year that that baby was born, this doctor was qualified, or part of the staff for those purposes. The magistrate himself, at the end of the hearing, tells us that this is a question of credibility. To me, credibility and weight of the evidence go, is, are questions that have to go to the fact finder, and they're appropriate for a jury to rule on, which is why we objected to the hearing in the first place, because we knew, from the prior orders, that the hearing was going to be based on, on factual, on factual analysis. Before you end, just one last question, which is, there was a settlement that dismissed the, yeah, we settled the case. Yeah, and when you settled the case, judgment was entered. I beg your pardon? Judgment was entered? Yes. And the judgment put an end to any finding of liability, is that right? No, yeah, yeah, that's correct. Let, let, let me explain. In the, in the settlement, we agreed that we would handle this appeal. So, what we did is, we did it two, in a two-tiered basis. If, if we are not successful in our appeal, then the settlement will be within the, within the cap limits. If we are successful in the appeal, then the settlement will be between the, within the policy limits, which of course is higher than the cap limit. So, basically, what we did is, we wanted to, basically, try to resolve the case without having to try the case, even if, even if we prevailed. And, and the defendants were amenable to that, and. And so, as from your perspective, that settlement agreement is just a way of, you basically agreed on a damages cap of your own, effectively. Yes, we did. And now, you're just appealing what the damages ruling would have been. That's right. So, if, if the court rules that this should have gone, that these. So, you, you settled liability, and you appealed damages, but you appealed damages with these limits. We actually didn't appeal damages. We appealed only the point that this issue should have gone to a jury, and not resolved by a, a judge as a prior effect. That's the only issue on appeal that, that, that, that we raised. We, we're, we are, we are not, if we prevail, we're not going to have a hearing on damages. We are not going to have a hearing on damages. In that sense. So, if, if, if, again, I think, I think you understood what I said as far as, if, if we, if, if we, if we lose, the settlement is within the. I'm just really trying to figure out why there's a live case still. But I guess you. It's a live case because in the settlement, in the settlement, we agreed that we, we would go forward with the Thank you. The, that, that, I think your time is up. I think I'm out of time. Yes, you are. I, I still have a. Yeah, what, two or three minutes. Thank you, counsel. At this time, if counsel for the Hospital Episcopal San Lucas would introduce himself on the record, if he can. Good afternoon, Your Honor. It's Attorney Luis Rodriguez Munoz from the law firm of Orlando Romero. We represent the Hospital Episcopal de San Lucas, and if it would please the court, I would like to address some of the questions that were posed. First off, Judge, there is no statute that requires there be a contract. What the statute has done is create educational possibilities once all of the public hospitals were sold on the island. That is the basis, the backstory of the cap statute, Your Honor. These hospitals were mostly all public. They were all subject to the public statutory cap. Once they were sold, there was, had to find a way to place that cap into these facilities to encourage them to take on medical students, because basically the island was losing medical staff. They were just leaving, because there's no place for them to, to learn. So, I would point out in my brief, Your Honor, that there's, this case is really clear error of review. This is an issue of law, as the court has asked about whether in the state court, whether this would be an issue for the jury. There is no jury. There's simply just the judge, and this is a matter that would have been dealt with either before trial, as part of serving judgment, motion to dismiss. At differing states of the litigation, this matter can be dealt with in the lower court. It's no different in this court, Your Honor, because judges all the time examine the factual evidence, then impose what they understand is the rule of law. Granted, the standard is different, obviously, motion to dismiss, motion to serve judgment, direct the verdict, but courts in this jurisdiction constantly look at the evidence presented and make determinations. In this particular case, Your Honor, the court did nothing different. It was faced with a jury trial. It wanted to streamline that jury trial and had an issue of law to deal with. Does the cap apply in this scenario? But it needed to make factual findings to arrive at that decision of law. Of course, Your Honor. So when I think of other analogous areas we have, like, for example, in the Section 1983 suit, there's qualified immunity. And qualified immunity, whether there exists qualified immunity, is a question of law for the court. We reviewed de novo. But facts that may inform that judgment generally are questions of fact that go to the jury, aren't they? Well, no, not necessarily, Your Honor. If the issue is raised at... So whether the officer saw the person get out of the car or didn't see the person get out of the car. If the officer saw the person get out of the car, then there was probable cause. If the officer didn't see, then there was no probable cause, clearly. Officer testifies, I saw him get out of the car. Someone else said you didn't see him. That would go to the jury, wouldn't it? Yes, Your Honor, because then that would be an issue. And so here, some witnesses say she was on the faculty. The other side says, yeah, but the faculty have contracts and there's no contract for her for that time period. That sounds like, do you believe the doctors or not? And the magistrate or the judge said, I believe, I find them very credible. That sounds like an issue of fact. But that's not the case that's before Your Honor. This case did not have anyone say she did not have a contract. What was stated and what's on the record, Your Honor, is that a physical contract can't be located. But the doctor never said she was not a part of the... No, but that, but for purposes of whether that raises a question, it certainly doesn't help you that you didn't locate a contract. The other side says the absence of a contract when contracting is your policy gives rise to an inference that she wasn't a faculty member during this period or else it looks kind of suspicious. Well, even if it was suspicious and it doesn't can't be found, Your Honor, still the plaintiff has the burden to come forward with some evidence and hence the reason why the court had an evidentiary hearing. So now you're making a point is it doesn't matter who should normally decide this issue because the facts here were so one-sided, no jury could have decided otherwise. I certainly agree with that statement. Suppose we disagree with that. Suppose we think that, well, fact finder, if they hadn't believed some of these doctors could have gone otherwise, then what? Then, Your Honor, there would have to be some factual basis to substantiate that. The mere absence of a contract... Your Honor, I'm asking you to suppose there was a, suppose it was up to whether you believed the doctors or didn't believe them, it was an issue of fact, who would decide that? That still would be an issue for the judge to determine whether the facts present, be it at trial, be it at an evidentiary hearing, is that sufficient to impose the statutory cap. That would not be a jury decision. That would be strictly the court's decision, either by remitter, editor, or even beforehand, instructed they can't find liability on $150,000. Are you saying something unique about the fact that we're talking about the application of the liability cap or are you making just a general point about how under Puerto Rico law a judge makes an assessment at summary judgment? No, Your Honor, I'm actually making both of those points. I'm saying, Your Honor, that this determination of the applicability of the cap can be done at any stage during the litigation. Motion to dismiss, motion for summary judgment, direct verdict, or in this case, evidentiary hearing before trial. This is an issue of law. Let me give you an example just so I can tease it out. Imagine a case, three witnesses testify. This person's a faculty member, worked with her every day, our best faculty member. Three people testify, never heard of her, never seen her at the school, ever. In that circumstance, who decides? I still say, Your Honor, that is the judicial determination by the judge. It doesn't go to the issue of the cause of action. Okay, so now you're making a point that under Puerto Rico law, this type of question, the applicability of the liability cap, is just always for the judge alone. Your Honor, I say that because it's always the judge. In Puerto Rico, there's no jury. No, I know that. So, what I'm saying, Your Honor, is that it's always de novo review. It's always de novo review. Okay, and what do you, is there a case in Puerto Rico law that says that?  What makes you then so confident that that's true? Because, Your Honor, it simply is the logic of previous statutes involving the cap. The cap, though, is new. I mean, I have to acknowledge that. So, there was the additor and remittitor statutes. They all treated it as judge only. It's only judge only. And so you're saying this is just no different than that. I would submit that. But we don't have anything in Puerto Rico law that you can point to telling us you're right. Though I can't come up with a case off the top of my head, Your Honor, but I would certainly point the court towards. Did you make that argument below? I focus my arguments below, Your Honor, that this is strictly a matter of law. I know, but in making the reason as to why, did you take the position that you're now taking to me, that even if there was a clear factual dispute, it still would be for the judge alone subject to de novo review? Yes, Your Honor. And when you made that, you said that was a consequence of Puerto Rico law because of it being a liability cap? No, Your Honor. I did not make that connection. But, again, what I would say, Your Honor, is that if one was to look at the state jurisprudence, one would have to look at the state immunity law of $150,000 cap because this is where this comes from. I guess I'm just trying to figure out. The district court here says it's a matter of law, and I'm trying to figure out what led the district court to say that. One possible route by which the district court could have said that is I didn't think there was any factual dispute. I mean, there just wasn't any. It was all one-sided. All the evidence went one way. If that were so, then there might be a problem because we can look at the record and say it's not so. A different version would be the reason the district court said it is because even if there's a factual dispute, it doesn't matter because this is a liability cap. I alone decide it, and I'm reviewed de novo. And I can't tell from the papers below or the district court's ruling which of those two things explains why the district court says it's a question of law, which it seems like it might matter for purposes of determining how to treat it. Because if it's that second kind where it's based on the Puerto Rico law treating the liability cap differently, that raises all kinds of complicated questions under Erie and the Seventh Amendment, blah, blah, blah. If it's the first kind, we just have an ordinary review. The district court either was right or not in saying that there was no factual dispute here. Your Honor, I think that in either way, Your Honor, I still believe that the outcome is still the same. If we examine the record as presented in the briefs and in the appendix, you'll see that the only thing that was discussed and argued is that there's a missing contract, that this faculty member wasn't a faculty member. There was nothing presented to the court to put that into dispute. Before you sit down, can you just address the jurisdictional point that I asked your opponent about, which is that in your view, why is the case still a lot? Well, Your Honor, one of the reasons we discussed and with the help of the court came to this arrangement whereby we could, or the plaintiff was allowed to preserve the issue, was to avoid a full blown out trial. Because what would have happened if we couldn't come to a settlement, and he could not reserve that right, then we would have to have the trial. He would have rejected the proposed settlement offer, and ultimately the settlement was within what we understand are the confines of the cap. He was giving an option that if he were to prevail, that there may be some settlement payment beyond that cap, but that it's finite. That we have clear numbers of what it is, because obviously, Your Honor, the settlement purpose is to buy the risk of a trial. And the trial could very well have meant that he got zero if we would have won. So it was a way, Your Honor, to avoid a very costly medical malpractice trial. Thank you. Thank you, counsel. One moment, please, sir. We're going to hear from attorney for the appellee, Concepcion Hiron. Good morning, Your Honors. My name is Anselmo Irizagirizari. I'm the appellee, Dr. Concepcion. May I have your support? Okay. The scenario in this case, very simple from my point of view. You have a hospital who has an agreement with the School of Medicine to receive physicians who need to be on training or have to prepare for their residency program. The public law, Puerto Rico, 136, the one that the counsel already mentioned before, allows to have private hospitals to receive physicians and to have the training in order to receive the license of physician or with a specialty in any case. In this case, we have a patient, Monica Perez. We have an attending physician, Dr. Concepcion, and we have the resident, Dr. Rodriguez, who were involved in the delivery of this baby. The public law 136 was created in order to provide that scenario for the physician in order to have resolved a problem that we're facing in Puerto Rico of lack of physicians. Therefore, in this case, when the issue was arised, there was also another case in the federal court that was the case of Delta Ortiz versus Hospital San Luca. In that case, I was also involved. In that case, we request to the district court to submit a certification to the Supreme Court of Puerto Rico because there was an issue that had to be addressed from the law of Puerto Rico on how to apply when you have more than one-third physician in any negligence case. And the court of Puerto Rico submits the certification right to the district court of Puerto Rico answering that there is only one cap, $150,000 for the damages. If you have a hospital that is with an agreement with the School of Medicine and you have an attending physician, like in this case, Dr. Concepcion, and you have a resident involved in the scenario. All those elements are present in this case. Therefore, the case which governs the status of, pardon me, the capital limit in the law of Puerto Rico, $150,000. If we went to trial and the trial decided for the plaintiff and produced a verdict of $1 million, we have to request a remittance according to the law of Puerto Rico because under the 80 cases, the law of the state prevails. Thank you. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel, Attorney Efron, please reintroduce himself on the record. He has a three-minute rebuttal. Thank you, Your Honor. David Efron for the appellants on rebuttal. Getting back to what both my colleagues stated, it shows you that the cap was not waived. In other words, if we would not have settled the case and the court determined there was a cap limit, we still had a right to go to a jury trial. And if we went to a jury trial and if we got zero, we would be here. And if we got anything under the cap limit, they would just deposit the money and the case was over. But if we would have gotten anything over the cap limit, then the court would have remitted it based on its prior finding that there was a cap, and then we would file the notice of appeal, and then we would be doing this exercise here with Your Honor. So really, we don't feel that we're making you waste your time or work excessively. This would have happened even if we wouldn't have settled it. Now, assuming plaintiffs would have prevailed. Now, you know, defendants pretended, intended us to prove a negative at the hearing. And, you know, how do you prove a negative? Well, you know, every witness said exactly what we thought was the situation. The hospital administrator stated that there's no record for that year for her having even an appointment letter or a contract during the year that the baby was born, 2015. The doctor said she didn't have a letter, and she admitted candidly that, you know, I guess, you know, it's probably right that I wasn't qualified that year. And everything seems to go in that direction. The magistrate judge even pointed out at the evidentiary hearing that it's curious that she signs contracts every year, but we haven't seen the contract, but the contract hasn't seen the light of day. And now, the magistrate says it's a question of credibility that the court has to determine. And it did, but it wasn't allowed to. The plaintiff's right to have the jury determine matters of weight and credibility and be the ultimate trier of fact is a Seventh Amendment right that my client has. It's well established that the courts take care of issues of law, but the trier of fact, the jury, decides under the appropriate instructions the factual issues. From what is submitted herein, Your Honors, appellants respectfully request that this honorable court of appeals reverse the district court's order entered on September 1st and adopting the magistrate report and recommendation and that the judgment entered dismissing the action be remanded. Thank you.